UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WANDA WATIKER**

      **Plaintiff,**                              Case No. 2:11-cv-918
                                                JUDGE GREGORY L. FROST
    **v.**                                        Magistrate Judge Elizabeth P. Deavers

**THE HARTFORD INSURANCE,**

      **Defendant.**

## OPINION AND ORDER

In this ERISA action, Plaintiff, Wanda Watiker, appeals from the denial of her application for long-term disability benefits under a plan administered by Defendant, Hartford Life and Accident Insurance Company ("Hartford"). The parties have filed cross-motions for judgment on the administrative record (ECF Nos. 16, 17), and Hartford has filed a memorandum in opposition (ECF No. 19). For the reasons that follow, the Court **DENIES** Watiker's motion (ECF No. 16) and **GRANTS** Hartford's motion (ECF No. 17).

### I. Background

Plaintiff, Wanda Watiker, worked for New Bakery Company of Ohio, a wholly owned subsidiary of Wendy's International, Inc. ("Wendy's"). Watiker worked as an administrative secretary in charge of freezers, a job that consisted of half sedentary work (sitting at a desk, working on a computer, and talking on the telephone) and half standing and walking (physically inspecting freezers and overseeing repairs and maintenance on freezers).

In late April or early May 2009, Watiker began to experience various medical symptoms, including weakness and dizziness, as well as blurred vision in her right eye. She was eventually

admitted into the hospital for tests on May 13, 2009.  Watiker successfully filed a claim with Hartford for short-term disability benefits for the period from May 13 until May 22, 2009, and Hartford extended these benefits a number of times through September 14, 2009.  Hartford eventually terminated the short-term benefits, however, after concluding that Watiker was not precluded from returning to work.  Watiker unsuccessfully appealed this termination, but she does not target that termination in this case.

In April 2010, Watiker applied for long-term disability benefits.  Hartford is also the insurer that issues and administers the long-term disability benefits plan that covers Watiker. That group benefit plan provides:

> **Disability or Disabled** means You are prevented from performing one or more of the Essential Duties of:
> 1) Your Occupation, during the Elimination Period;
> 2) Your Occupation, for the 12 month(s) following the Elimination Period . . .;
> 3) after that, Any Occupation . . . .

(Ecf No. 18-1, at 19.)  The plan defines an "Essential Duty" as "a duty that . . . is substantial, not incidental," "is fundamental or inherent to the occupation," and "can not be reasonably omitted or changed."  (ECF No. 18-2, at 20.)  The plan states that the "ability to work for the number of hours in Your regularly scheduled work week is an Essential Duty."  (ECF No. 18-2, at 20.) The plan also defines "Your Occupation" as "Your Occupation as it is recognized in the general workplace" and not the specific job for the specific employer involved in a claim.  (ECF No. 18-1, at 22.)  Finally, the plan defines "Elimination Period" as "the longer of the number of consecutive days at the beginning of any one period of Disability which must elapse before benefits are payable or the expiration of any Employer sponsored short term Disability benefits or salary continuation program."  (ECF No. 18-1, at 20.)

Following a period of medical review, Hartford denied Watiker's claim in a letter dated July 9, 2010, which informed her:

> The Totality of the information received does not support that you are unable to perform the duties of your occupation.
>
> We considered all of the evidence in your claim file in making our decision. The LTD policy states that benefits are payable if you are Disabled throughout and beyond the policy's Elimination Period. The combined information in your file does not show that you are unable to perform the essential Duties of Your Occupation on a full time basis as of 11/9/2009. Because of this, we must deny your claim for LTD benefits.

(ECF No. 18-2, at 224.) The letter also informed Watiker of her right to appeal the denial of benefits.

Watiker belatedly exercised her right to appeal, and a second Hartford examiner agreed to consider the appeal. The company notified Watiker that her appeal was incomplete and gave her an additional 60 days in which to complete the appeal. Watiker did not submit any additional medical records on appeal. Following a review by two doctors of the medical file, Hartford denied Watiker's appeal in a letter dated May 31, 2011. (ECF No. 18-1, at 63-65.)

Having exhausted her administrative remedies, Watiker filed the instant action on October 13, 2011. She asserts a single claim under the Employee Retirement Income Security Act of 1974 ("ERISA") for benefits under 29 U.S.C. § 1132(a)(1)(B). (ECF No. 2.) The parties have completed briefing on cross-motions for judgment on the administrative record, and the case is ripe for disposition. (ECF Nos. 16, 17.)

## II. Analysis

### A. Standard Involved

The statute under which Watiker proceeds, 29 U.S.C. § 1132(a)(1)(B), "gives a

participant the right to bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' " *Creech v. Unum Life Ins. Co. of N. Am.*, 162 F. App'x 445, 448 (6th Cir. 2006). It is well settled that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kalish v. Liberty Mut./Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 505-06 (6th Cir. 2005) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). *See also Calvert v. Firstar Finance. Inc.*, 409 F.3d 286, 291-92 (6th Cir. 2005). If the plan provides the administrator with discretion, then "the highly deferential arbitrary and capricious standard of review is appropriate." *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998). *See also Calvert*, 409 F.3d at 291-92.

Both sides state in their briefing that the arbitrary and capricious standard applies in the instant case. (ECF No. 16, at 16; ECF No. 17, at 2.) The Sixth Circuit has explained that, in determining whether this standard applies, a court should remain cognizant that a plan is not required to use certain magic words to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp.*, 970 F.2d 1569, 1572 at n.2 (6th Cir. 1992). What is required is "a clear grant of discretion [to the administrator]." *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994). Because the plan provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy," the Court agrees with the parties that the arbitrary and capricious standard applies. (ECF No. 18-1, at 18.)

4

This standard "does not require [the Court] merely to rubber stamp the administrator's decision." *Jones v. Metro. Life Ins. Co.*, 385 F.3d 654, 661 (6th Cir. 2004) (citing *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)).  Rather, under the arbitrary and capricious standard, a plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "the arbitrary and capricious standard is the least demanding form of judicial review").  A court must therefore "review the quantity and quality of the medical evidence and the opinions on both sides of the issues." *Jones*, 385 F.3d at 661.  In other words, the Court will uphold a benefit determination if it is "rational in light of the plan's provisions." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996).  *See also Calvert*, 409 F.3d at 292.

In evaluating the record, then, the Court is required to consider only the facts known to the plan administrator at the time the final decision was made to deny disability benefits. *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005); *see also Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).  The Court is also required to remain cognizant of the potential inherent conflict of interest that arises when a party such as that Hartford acts as both the decision maker on a claim and the potential payor of that claim.  *Calvert*, 409 F.3d at 292. With these concerns in mind, the Court shall turn to the merits.

**B. Discussion**

Watiker argues that she is entitled to benefits because she is disabled within the meaning of the plan and because, in reaching the contrary conclusion, Hartford erred in five ways.  None of these reasons, viewed alone or together, prove persuasive.

In her first argument, Watiker contends that a dispositive conflict of interest exists because Hartford both evaluates and pays claims for benefits. The inherent conflict of interest does not, however, weigh heavily in favor of finding that the decision to deny Watiker's benefits claim was arbitrary and capricious. This is because Watiker has failed to offer any evidence at all that this conflict of interest affected Hartford's decision to deny benefits.

The Sixth Circuit has explained that the existence of the conflict alone is not dispositive:

> [M]ere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits. *See Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998) ("Because our review of the record reveals no significant evidence that SummaCare based its determination on the costs associated with Mrs. Peruzzi's treatment . . . we cannot conclude that SummaCare was motivated by self-interest in this instance"); *see also Mers v. Marriott Int'l Group Accidental Death & Dismemberment Plan*, 144 F.3d 1014, 1020 (7th Cir. 1998) ("We presume that a fiduciary is acting neutrally unless a claimant shows by providing specific evidence of actual bias that there is a significant conflict"); *Sullivan v. LTV Aerospace & Def. Co.*, 82 F.3d 1251, 1259 (2d Cir. 1996) ("[A] reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists, . . . but that the conflict affected the reasonableness of the Committee's decision") (internal quotation and citations omitted).

*Cochran v. Trans–General Life Ins. Co.*, 12 F. App'x 277, 281 (6th Cir. 2001). Despite this requirement, Watiker has set forth no evidence that the conflict actually affected the decision at issue here. *See e.g., Peruzzi*, 137 F.3d at 433 (finding that the plaintiff's evidence that defendant SummaCare's medical director conferred with two members of the plan's management, including the chief financial officer, shortly before the claim was denied was insufficient evidence that the conflict of interest affected the defendant's decision to deny benefits). Rather, she impermissibly relies simply upon the fact that the conflict exists as grounds for obtaining a judgment. *See Rose v. Hartford Finan. Servs. Group, Inc.*, 268 F. App'x 444, 449 (6th Cir.

6

2008) (requiring a plaintiff to provide evidence that a conflict of interest actually motivated a denial of benefits because "the mere existence of this conflict does not render [a denial] decision arbitrary and capricious"). Although relevant to her case, this factor does not itself validate Watiker's argument that the decision to deny her benefits claim was arbitrary and capricious.

Watiker next argues that Hartford failed to offer a reasoned explanation for rejecting the opinions of her treating physicians, Dr. Shelly Dunmyer and Dr. William Chang. Hartford is of course not required simply to credit the opinions of any treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). But Hartford cannot ignore or disagree with those opinions without cause to do so. The Sixth Circuit has explained the rules for determining the weight the weight to be afforded the opinions of a treating physician:

> Generally speaking, a plan may not summarily reject the opinions of a treating physician, but must instead give reasons for adopting an alternative opinion. [*Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006)]. Giving greater weight to a non-treating physician's opinion for no apparent reason lends force to the conclusion that a plan administrator's decision is arbitrary and capricious. *Ibid.* Plan administrators, however, "are not obligated to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). To that extent, a lack of objective medical evidence upon which to base a treating physician's opinion has been held sufficient reason for an administrator's choice not to credit that opinion. *See, e.g., Boone v. Liberty Life Assur. Co. of Boston*, 161 F. App'x 469, 473 (6th Cir. 2005) (administrator's decision not to credit treating physicians' assessments not arbitrary because the assessments were not supported by the objective evidence, as required by the plan document).

*Morris v. Am. Elec. Power Long-Term Disability Plan*, 399 F. App'x 978, 986-87 (6th Cir. 2010). This standard proves dispositive of Watiker's second argument.

The Court agrees with Hartford that its reviewing physicians and its claim examiner did not reject Chang's opinion regarding Watiker's ability to work. Chang imposed restrictions or limitations on Watiker that would enable her to work, and Hartford's ultimate analysis is thus

7

aligned with that evaluation.  Chang did not opine that Watiker could not work.

  Hartford does disagree with Dunmyer, who opined that Watiker was unable to work while experiencing vertigo.  (ECF No. 18-4, at 95.)  Dunmyer apparently based this opinion on Watiker's subjective complaints.  This presents what is perhaps Watiker's strongest argument, given that a plan administrator can easily run afoul of subjective complaints when only a file review is involved.  *See, e.g., Combs v. Reliance Standard Life Ins. Co.*, No. 2:08-cv-102, 2012 WL 1309252, at *11-12 (S.D. Ohio Apr. 12, 2012).  But under the Sixth Circuit's analytic approach in *Morris*, Hartford is not obligated to accord special deference to Dunmyer's opinion when there is a lack of objective medical evidence upon which to base that opinion.  A plan administrator need not credit as dispositive a claimant's subjective complaints in the absence of corroborating, objective medical evidence.  *Yeager*, 88 F.3d at 382 ("In the absence of any definite anatomic explanation of plaintiff's symptoms, we cannot find that the administrator's decision to deny benefits was arbitrary and capricious.").  The relative dearth of evidence here is a sufficient reason for Hartford's choice not to credit Dunmyer's opinion, an opinion that disagreed with Watiker's other treating physician as to whether she could work.

  This leaves Watiker's second argument unpersuasive.  Hartford did not reject as not credible the substance of Watiker's complaints; rather, it simply did not give dispositive weight to the medical opinion that afforded her statements greater weight.  The rejection of Dunmyer's opinion in favor of crediting Chang and the file reviewers was not arbitrary or capricious.

  In her third argument, Watiker asserts that Hartford erred in failing to discount the opinion of the reviewing physician it retained to conduct the file review.  Hartford actually had *two* doctors review Watiker's file, Dr. Robert Carpenter and Dr. Daniel Emerson.  Hiring these

8

two doctors was permissible. *Wooden v. Alcoa, Inc.*, No. 3:11 CV 525, 2012 WL 274764, at *7 (N.D. Ohio Jan. 31, 2012) ("Plaintiff briefly attacks the credibility of these medical opinions, alleging because Defendants hired these doctors to evaluate her disability, this Court should discount their diagnoses. But Defendants have every right to hire independent doctors to review Plaintiff's alleged disability." (citations omitted)). Similarly, crediting these two doctors' opinions was permissible in light of the Sixth Circuit's recognition that "[r]eliance on other physicians is reasonable so long as the administrator does not totally ignore the treating physician's opinions." *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010). *See also McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). Hartford did not ignore the treating physicians; the independent review in fact included peer-to-peer discussion by Emerson with the treating physicians as part of the file review. (ECF No. 18-1, at 97.) Watiker's third argument is therefore also unconvincing.

Watiker posits in her fourth argument that Hartford erred in electing to rely upon a file review rather than exercising its right under the plan to have a physician examine her. The Sixth Circuit has made clear, however, that the fact that a plan administrator such as Hartford declines to exercise its right to an examination in favor of a file review does not, standing alone, demonstrate arbitrary and capricious action; instead, it is but one factor to consider in the overall assessment of whether Hartford acted improperly. *Calvert*, 409 F.3d at 295. It is this overall assessment that matters, and Hartford has offered a sufficiently reasoned explanation, based on evidence, for its decision to deny Watiker benefits.

The court of appeals has directed that a "plan administrator must provide [persons conducting a file review] with all letters from a claimant's physician, which the file reviewer

9

must consider." *Helfman v. GE Group Life Assurance Co.*, 573 F.3d 383, 393 (6th Cir. 2009). There is no evidence here suggesting that the file review here failed to include all the evidence. The fact that Hartford was permitted to do more than just a comprehensive review does not mean that it erred by failing to do more.

In her fifth argument, Watiker asserts that Hartford erroneously classified her job as sedentary and then concluded that she could perform the duties of that job. Hartford disagrees with these assertions and directs this Court to record evidence in which the claim examiner handling Watiker's claim, Andrew Barson, recorded Watiker's description of part of her job duties as "heavy work." (ECF No. 18-2, at 47.) Hartford also points this Court to the fact that Watiker's treating physician, Dr. William Chang, set such restrictions or limitations of "no repetitive right hand fingers movement." (ECF No. 18-3, at 33.) Thus, Hartford reasons, the Court should not find Watiker's argument to be well taken because the job duties were consistent with the restrictions or limitation recognized. The parties' fairly Spartan briefing on this issue has not been as helpful as it should have been, but review of the record in its totality indicates that Watiker's premise proves unpersuasive.

Hartford's July 9, 20120 denial letter recognized that Watiker "reported [her] job as sedentary work 50% of the time with use of computer and phone." (ECF No. 18-2, at 72.) The letter also summarizes the restrictions Chang placed on Watiker and concluded that the restriction provided are within Watiker's occupational duties. (ECF No. 18-2, at 72-73.) This is not treating Watiker's job as sedentary. Rather, it is correctly recognizing the mixed nature of the job and that the restrictions upon Watiker did not preclude working in that mixed capacity.

In contrast, some support for Hartford misunderstanding Watiker's job exists in the May

31, 2011 denial letter related to Watiker's appeal.  Hartford's appeal specialist, Donna Gatling, wrote in that letter that Watiker's duties "have been described as being primarily sedentary." (ECF No. 18-1, at 63.)  The use of "primarily" is of course incorrect, and the Court is concerned about that wording.  There is concern that proceeding from a tainted premise invariably risks arriving at an inherently incorrect denial decision.  But the remainder of the letter fairly summarizes the file review conclusions and the medical evidence, so that this Court cannot say that even in light of the misstatement, the ultimate conclusion is flawed.  In other words, regarding Hartford's process in its totality, the one misstatement does not reveal an arbitrary and capricious process warranting reversal.  The restrictions and evaluations presented to Gatling cannot be said to warrant a finding of disability for either a sedentary occupation or an occupation of mixed sedentary and non-sedentary duties such as Watiker's position.  The dubious use of "primarily" therefore does not, taken alone or even in conjunction with the other factors, prove dispositive when that usage is viewed in the context of the medical evaluations and results.

      Watiker argues that Hartford still erred in failing to consult with a vocational expert to determine whether Watiker's prior work was sedentary or whether other work existed that she could perform with her limitations.  In other words, she faults Hartford for not exercising its right to employ a vocational expert, a contention that conflates having a right to do something with having a duty to do something.  It makes sense to this Court to use a vocational expert in some ERISA claim cases.  The Sixth Circuit has held that a plan administrator is not, however, required to utilize a vocational expert in such circumstances.  *Burge v. Republic Engineered Prods., Inc.*, 432 F. App'x 539, 550 (6th Cir. 2011) ("[The plan administrator] was also not

required to consider vocational evidence, as opposed to medical evidence, in analyzing [the claimant's] claim."); *Douglas v. Gen. Dynamics Long Term Disability Vocational Plan*, 43 F. App'x 864, 870 (6th Cir. 2002) ("Even assuming, *arguendo*, that the Plan Administrator should have considered testimony from a vocational expert regarding what type(s) of employment [the claimant] could have performed given his disability before denying his claim for benefits, there is no requirement . . . That the Plan had to bear the costs associated with obtaining a vocational expert's testimony and opinion."). Hartford's decision not to employ a vocational expert here, although a factor considered by this Court, does not carry dispositive weight either alone or in conjunction with the other factors considered. Watiker's fifth argument thus also proves unpersuasive.

Both taken alone and considered together, Watiker's arguments fail to demonstrate that Hartford engaged in arbitrary and capricious decisionmaking. The Court agrees that Hartford could have done more, such as exercising its right to have Watiker examined and its right to use a vocational expert. It also could have been more careful in its language, such as that used in the denial of the appeal. But as the Sixth Circuit has explained, "the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 362 (6th Cir. 2002). The overall context of the less than perfectly executed denial decision does not present an arbitrary and capricious process.

### III. Conclusion

Watiker's arguments, considered both alone and together in an overall assessment of

Hartford's decision to deny benefits, fail to prove that Hartford acted in an arbitrary and capricious manner.  Rather, Hartford's decision to deny benefits was the result of a deliberate, principled reasoning process and is supported by substantial evidence.  Hartford is therefore entitled to judgment on the administrative record.

The Court therefore **DENIES** Watiker's motion (ECF No. 16) and **GRANTS** Hartford's motion (ECF No. 17).  The Clerk is instructed to enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

    /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE